IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBY MCCURDY | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOAN ESMONDE, ESQUIRE AND | : | |
|  HON. LYNNE ABRAHAM, | : | |
|     Defendants | : | No. 02-4614 |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE COMPLAINT AND AMENDED COMPLAINT**

                                                      Karen A. Brancheau
                                                      Chief, Civil Litigation Unit
                                                      Philadelphia District Attorney's
                                                        Office
                                                      Counsel for Defendants

1421 Arch Street
Philadelphia, PA  19102
(215) 686-5771

**Procedural History**

On or about July 11, 2002, plaintiff, Bobby McCurdy, sued Philadelphia District Attorney Lynne Abraham (the "District Attorney") and Joan Esmonde, Assistant District Attorney ("ADA Esmonde"), asserting violations of the Civil Rights Act, 42 U.S.C. §1983, and raising state tort claims. Plaintiff served his Complaint on defendants on August 6, 2002.[1] On or about August 27, 2002, plaintiff filed his Amended Complaint presenting additional state tort claims and expanding upon his claim that his constitutional rights were violated.

In this action, plaintiff seeks to simultaneously litigate issues raised or that could have been raised in child support proceedings that resulted in the entry of a support order in the Court of Common Pleas of Philadelphia County. Linda Jackson v. Bobby McCurdy, PACSES Case No. 842006095. In fact, plaintiff has alleged virtually identical constitutional violations under §1983 in this federal case and in his pending appeal to the Pennsylvania Superior Court. Superior Court No. 1591 EDA 2002. The facts are summarized in various court orders and filings in the Court of Common Pleas by Linda Jackson and the Department of Public Welfare ("DPW"), or by ADA Esmonde, on their behalf acting pursuant to the Pennsylvania support statute. 23 Pa.C.S. §4306.[2] On March 20, 1990, Ms. Jackson filed a complaint against plaintiff for the support of Bobby McCurdy, Jr., who was born on June 15, 1981. Exhibit A. Because plaintiff was

---

[1] The parties stipulated to an extension of time, until September 16, 2002, for defendants to respond to the Complaint.

[2] In deciding a motion to dismiss, the court can consider public records attached as exhibits to the motion without converting the motion into a motion for summary judgment. Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999), cert. denied, 528 U.S. 1078 (2000); Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1195 (3d Cir. 1993).

incarcerated, the complaint was dormant until 2000.  See Exhibit B (Docket Entries).

ADA Esmonde then learned that plaintiff's lawyers, including counsel in this action,

Richard A. McDaniel, Esquire, had received $121,404.32 on plaintiff's behalf related to

the death of another of plaintiff's children, Donte Dawson.[3]  Accordingly, ADA Esmonde

took steps to freeze distribution of these funds pending disposition of the complaint for

support.  An order, dated July 11, 2000, the Honorable Paul P. Panepinto of the Court of

Common Pleas of Philadelphia issued an order pursuant to Pa.R.Civ. P. 1910.26,

preventing plaintiff's lawyers, including Mr. McDaniel, from distributing the funds to

plaintiff pending further court order.  Exhibit D.

That same day, the Honorable Anne E. Lazarus of the Philadelphia County

Orphans Court entered an order concerning distribution of the estate of Donte Dawson,

making distribution subject to amounts owing to DPW.  Exhibit E.  Not more than

several days later, counsel for plaintiff, Mr. McDaniel, in a conference with Judge

Lazarus, accepted responsibility for complying with the non-distribution order.  See

Exhibit F, Petition for Special Relief; in particular Exhibit C thereto.[4]  Although Rule

---

[3] This grew out of a civil rights action brought by Donte's mother, Cynthia Dawson against several police officers for the shooting death of Donte, another of plaintiff's sons. Dawson v. Dodd, et al., No. Civ.A. 99-cv-2655 (E.D.Pa.).  Although plaintiff criticizes ADA Esmonde's reference to the action as a personal injury action, her understatement in the use of terms is irrelevant to this action.

In any event, the Docket in the civil rights case shows that the sum of $496,824.82 was to be held in bank accounts pending entry of a distribution order by the Philadelphia Court of Common Pleas (Docket, 14).  Exhibit C.  The matter was then before the Honorable Anne E. Lazarus of the Orphans Division of the Philadelphia Court of Common Pleas.  In re Estate of Donte Dawson, No. 1438 OC 1999.

[4] This is a letter dated July 18, 2000, transmitting checks totaling $121,404.32 to
(continued. . . .)

1910.26 would have permitted plaintiff to petition to vacate the July 11, 2000, there obviously was no reason to do so given his counsel's commitment to Judge Lazarus and her own order making distribution subject to amounts owed to DPW.[5]

A pretrial conference in the support case was scheduled for February 12, 2002. When the parties did not appear, the court entered an order dismissing the complaint for support. On March 15, 2002, ADA Esmonde filed a Petition for Special Relief seeking to reinstate the complaint. Exhibit F. A hearing was held on May 1, 2002.

At the hearing, ADA Esmonde summarized the background of the case. When she noted that DNA testing had confirmed plaintiff's paternity of Bobby McCurdy, Jr., plaintiff acknowledged: "He's my son. . . . Never denied it." Exhibit G, N.T. 5/1/02, 7-8.[6] Plaintiff then told the court that he wished to proceed that day even though Mr. McDaniel, who had represented him in the Orphans Court matter before Judge Lazarus, had requested a continuance. He wished to proceed, plaintiff represented,

> because this situation has been going on for awhile and I'm pretty much tired of it. I would like to know what is the amount owed to Welfare. Today if I can find out maybe

---

(continued. . . .)

plaintiff's counsel, Mr. McDaniel, and confirming a conference with Judge Lazarus the week before, i.e., immediately after the July 11, 2000, non-distribution order in the child support case in which he had made this commitment in the support case, and the July 11, 2000, distribution order in the Orphans Court matter. This refutes plaintiff's claim with respect to the non-distribution order. He had the opportunity to be heard and agreed to abide by the non-distribution order. Pursuant to Judge Lazarus's order, the amount to be distributed to him in the Orphans Court matter was subject to support owed to DPW. No more process was due.

[5]Plaintiff attaches to his Complaint a document showing that there were no support arrearages on August 10, 2000. That, however, is irrelevant because no support order had been entered as of that date.

[6] Even if plaintiff had previously admitted paternity, as he claims, it was for his protection to conduct testing to confirm it.

4

>we can resolve this, because I talked to him [Mr.McDaniel].
>It seems the longer he drags it on, it's not good for me.

Id., 6. Judge Zaleski accepted plaintiff's representation. After hearing from him and ADA Esmonde, Judge Zaleski entered an order reinstating the complaint, determining plaintiff to be the father of Bobby McCurdy. Jr., and permitting all but $30,000 from the estate to be distributed to plaintiff by Mr. McDaniel, until the exact amount of child support arrearages could be determined. Exhibit H. As plaintiff acknowledges, that amount was later determined to be $19,285.71. The hearing ended with plaintiff agreeing to the court's order and saying, "I want to straighten this out as soon as possible." Exhibit G, N.T. 5/1/02, 10-11.

Notwithstanding plaintiff's agreement, his lawyer appealed the May 1, 2002, order to the Superior Court. Exhibit I. In his Statement of Matters Complained of on Appeal, Mr. McDaniel complains, inter alia, that plaintiff did not waive his supposed right to counsel at the hearing,[7] that his rights under 42 U.S.C. §1983 were violated by the support proceedings, and that the July 11, 2000, order freezing distribution of his inheritance from the estate of his son also violated due process and his civil rights under 42 U.S.C. §1983. Exhibit J.[8]

---

[7] Plaintiff had no right to counsel in these proceedings. E.g., McConnell v. Berkheimer, 781 A.2d 206 (Pa. Super. 2001); Schultz v. Connelly, 548 A.2d 294, 297 (Pa. Super. 1988). Moreover, the record shows, contrary to plaintiff's allegation that ADA Esmonde somehow "manipulated and extorted plaintiff" into waiving counsel (Amended Complaint, ¶23), that the court determined that plaintiff chose to proceed without counsel. Exhibit G, N.T. 5/1/02, 7.

[8] Thus, plaintiff did not even begin to complain about the non-distribution order until after it was lifted on May 1, 2002, when he filed his Superior Court appeal and the instant Complaint.

In his federal civil rights lawsuit, plaintiff raises virtually identical claims. He also complains of ADA Esmonde's arguments to the state court and alleges that she made misrepresentations to, and manipulated the court in the support proceeding, and failed to follow state law and procedure and the Pennsylvania Code of Professional Responsibility.[9] Plaintiff took no steps to vacate the July 11, 2000, orders of two separate judges and, in fact, by his lawyer's representations to Judge Lazarus and his own consent to the support order at the support hearing has waived any claim with respect to the propriety of the non-distribution order. Nonetheless, plaintiff now asserts that he was deprived of his money from that date until May 5, 2002. On this latter date, according to plaintiff, he was paid all but the amount determined to be the support arrearages pursuant to Judge Zaleski's May 1, 2002, order (Amended Complaint, ¶37, 38). Because the support ordered by Judge Zaleski's order has not been paid, ADA Esmonde has been forced to file a Petition for Special Relief in the nature of a motion for contempt for enforcement of that order. See Exhibit K.[10] Thus, *even though plaintiff's lawyer has never paid the*

---

[9] Plaintiff claims that ADA Esmonde made misrepresentations regarding plaintiff's counsel, and caused the state court judge to act "summarily, arbitrarily, and capriciously;" "manipulated and extorted plaintiff" into waiving counsel, made "a cavalier misrepresentation" to the court concerning state law (Amended Complaint, ¶¶22, 23, 24, 25). The record unequivocally refutes plaintiff's hyperbole. Exhibit E.

As to plaintiff's allegations that the state court proceedings did not comport with state law, and that ADA Esmonde somehow violated the Pennsylvania Rules of Professional Conduct, "section 1983 does not provide a cause of action for violations of state statutes." Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990), cert. denied sub nom., Borough of Rosell v. Brown, 501 U.S. 1218 (1991).

[10] Although plaintiff had requested Judge Zaleski to stay his order pending appeal, that request was denied (Exhibit I, exhibit D thereto), and plaintiff did not appeal denial of the stay to the Superior Court. Accordingly, the appeal did not stay enforcement of the order. Pa.R.A.P. 1731(b) (appeal of child support order operates as stay only upon order of court and payment of security). See also Pa.R.A.P. 1701(a)(2); 1732(b).

*amount of the child support from the funds entrusted to him by Judge Panepinto's July 11, 2000, order and ordered to be paid pursuant to Judge Zaleski's order*, he claims that that amount has been "unlawful[ly]taken" from plaintiff (Amended Complaint, ¶38).[11] Plaintiff claims to have been deprived of his rights under the Fourth and Fourteenth Amendments. Amended Complaint, ¶40.

Plaintiff also raises pendent state tort claims against ADA Esmonde based on her allegedly negligent and malicious actions and misrepresentations. He accuses the District Attorney of not having a policy against obtaining prejudgment attachment orders without notice and a hearing, and of deficiencies in training, which allegedly violated his rights under the Fourth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, attorney's fees and declaratory relief.

The Complaint should be dismissed for two fundamental reasons. Plaintiff here raises claims that are raised or could have been raised in the pending state court proceeding. Because the issues raised in this federal suit are inextricably intertwined with the state court support proceedings, this Court is without subject matter jurisdiction pursuant to the <u>Rooker</u>-<u>Feldman</u> doctrine. For similar reasons, <u>Younger</u> abstention applies here, where the state has a paramount interest in matters of child support, and there is a pending state proceeding in which plaintiff can and has raised the issues here presented.

---

[11] This is an overstatement. At most, plaintiff's enjoyment of the funds, which his lawyer presumably held for him in an interest-bearing account, was deferred.

**ARGUMENT**

    I.    **THE COMPLAINT SHOULD BE DISMISSED DUE TO LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO THE ROOKER-FELDMAN DOCTRINE.**

Matters of domestic relations, including child custody and support, have been traditionally left to the state courts to adjudicate. E.g., Ankenbrandt v. Richards, 504 U.S. 689, 701 (1992) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not the laws of the United States")(citation omitted); Solomon v. Solomon, 516 F.2d 1018 (3d Cir. 1975) (recognizing state's vital interest in domestic relations). It is also well settled that state courts are perfectly capable of resolving federal constitutional claims. Monaghan v. Deakins, 798 F.2d 632, 635 (3d Cir. 1986), vacated on other grounds, 484 U.S. 193 (1988).

In this civil suit, plaintiff objects to the state support proceeding and its outcome, while he is simultaneously appealing that ruling in state court. In that state court appeal, plaintiff has raised or could have raised claims identical to those presented here, including §1983 claims. Plaintiff bears the burden of proving that jurisdiction exists. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir. 1977). This he has not done.

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks subject matter jurisdiction. Daily v. Daily, 96 F. Supp. 2d 463, 465 (E.D. Pa. 2000). In each of the various constitutional claims and alleged state law violations plaintiff has raised, he is attacking the state court proceedings and challenging the validity of the underlying state court support order. He is not permitted to attack the

validity of the state court proceedings in the lower federal courts. Only the state court that entered the judgment, or a state appellate court, can declare the state court proceedings invalid or vacate the judgment, and only the United States Supreme Court can review the state courts' rulings.

Under the Rooker-Feldman doctrine,[12] federal district courts lack subject matter jurisdiction over challenges to state court decisions. Daily v. Daily, supra 96 F.Supp.2d at 466. The Rooker-Feldman doctrine precludes a federal court from reviewing the final adjudication of a state court, or from considering constitutional claims that are "inextricably intertwined" with a state court's decision in a judicial proceeding. Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir 1992), citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983). This rule applies even where, as here, "plaintiff allege[s] that the state court's action was unconstitutional." Id. at 86.[13]

Rooker-Feldman applies when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996), citing Marks v. Stinson, 19 F.3d 873, 886 n.11 (3d Cir. 1994). Accord Centifanti v. Nix, 865

---

[12] District of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). The Rooker-Feldman doctrine rests on the principle that district courts have only original jurisdiction; the full appellate jurisdiction of the federal courts in civil cases lies in the United States Supreme Court. Here, if plaintiff does not succeed on his constitutional claims in the Superior Court of Pennsylvania, he may proceed to the state Supreme Court and then, the United States Supreme Court.

[13] This doctrine applies to judgments of both a state's highest and lower courts. Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. Of New York and New Jersey Police Dep't., 973 F.2d 169, 178 (3d Cir. 1992).

9

F.2d 1422, 1430 (3d Cir. 1989).  Rooker-Feldman applies not only to claims that were actually brought in state court, but also to claims that could have been brought there. Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992).

"A plaintiff may not obtain federal review of adverse state court decisions by casting his complaint as a civil rights action."  Rose v. County of Lehigh, No. CIV.A. 01-13, 2001 WL 1085044 *1 (E.D. Pa. 2001).  See Altemose v. Charlestown Township, No. CIV. A. 98-2862, 1999 WL 179759, at *2 (E.D. Pa. 1999)  (disappointed plaintiff, through artful pleading in federal court, may not attempt to reverse decision of Pennsylvania state courts), aff'd, 205 F.3d 1328 (3d Cir. 1999); Logan v. Lillie, 965 F.Supp. 695, 698 (E.D. Pa. 1997) (Rooker-Feldman does not "permit a disappointed state plaintiff to seek review of a state court decision in federal court by masquerading his complaint in the form of a federal civil rights action"), aff'd, 142 F.3d 428 (3d Cir. 1998).

This Court has repeatedly dismissed §1983 cases like this, which raise issues related to the custody and support of children, for lack of subject matter jurisdiction based on Rooker-Feldman.  For example, in Logan v. Lillie, supra, Logan sued state court judges and a custody hearing officer alleging constitutional violations and state tort claims.  As here, Logan complained of improper procedures and an order entered without a hearing.  In dismissing the case for lack of subject matter jurisdiction, this Court said:

> *Rooker-Feldman* counsels that the path for correcting a lower state court's decision, even one which assertedly results in a violation of the plaintiff's federal constitutional rights, lies with the state appellate courts and ultimately with the United States Supreme Court.

 965 F. Supp. at 698.  In Rose v. County of Lehigh, No. CIV.A. 01-13, 2001 WL 1085044, *1-2 (E.D. Pa. 2001), Rose brought a civil rights action claiming, as here, that

defendants' misrepresentations and misconduct and violations of state law somehow caused the state court to render unlawful rulings in his child custody case. Finding that the claims "necessarily impugn[]and challenge[] the correctness of the decision rendered," this Court dismissed the action on Rooker-Feldman grounds. Accord Hughes v. MacElree, No. CIV.A. 97-3304, 1997 WL 733609, *2 (E.D. Pa. 1997) (dismissing on Rooker-Feldman grounds where §1983 claims alleged misconduct by state actors in custody proceeding); Weinstein v. Lasover, Nos. CIV.A. 93-1552, 93-4223, 1993 WL 475505, 1, *3 (E.D. Pa. 1993) (dismissing on Rooker-Feldman grounds where claims related to alimony and support that were the subject of state court proceedings); Fuller v. Harding, 699 F. Supp. 64, 66-67 (E.D. Pa. 1988) (applying Rooker-Feldman to §1983 action regarding custody proceedings).

      Plaintiff apparently would like the Court to believe that the alleged lack of notice and opportunity to be heard and the alleged denial of his rights to equal protection and counsel, based upon ADA Esmonde's arguments to the court in the support proceeding, give rise to his civil rights action.[14] He is wrong. Although plaintiff "labels his lawsuit as a §1983 action alleging due process violations, his real injury is the child support order, not any alleged denial of due process." Gorzelanczyk v. Baldassone, No. CIV. A. 01-3012, 2002 WL 378174, *1 (7th Cir. 2002). If the state court had not ordered support, plaintiff would not have suffered the alleged injuries for which he now seeks relief and he would have "no constitutional claim to bring." Young v. Murphy, 90 F.3d 1225, 1231 (7th Cir. 1996) (where injury alleged was state judgment of incompetency rather than denial of due process, Rooker-Feldman barred claim). Plaintiff is only alleging these

---

[14] Plaintiff hardly has a claim under §1983 against ADA Esmonde because the court was persuaded by the arguments she made.

11

constitutional violations and state law claims because the state court entered an adverse judgment. If the state court had denied support, plaintiff would not and could not be asserting that his constitutional rights were violated. As this Court has said in a virtually identical context:

> [T]he argument that defendants Long, Lacey, and McHugh violated plaintiff's 14th Amendment right to due process is premised upon the assumption that the Chester County Court wrongly decided the merits of his child custody case. To make that determination, the court would have to perform an appellate-style review of the state court custody order. The *Rooker-Feldman* doctrine clearly prohibits such action.

Hughes v. MacElree, No. CIV.A. 97-3304, 1997 WL 733609, *2 (E.D. Pa. 1997). See Logan v. Lillie, supra 965 F.Supp. at 699 (to evaluate plaintiff's constitutional claims, court would have to determine that state court "wrongly decided" custody and visitation; Rooker-Feldman bars claims); Behr v. Snider, 900 F.Supp. 719, 725 (E.D. Pa. 1995) (where plaintiff in §1983 action actually sought to invalidate state court custody decisions, case dismissed for lack of subject matter jurisdiction).[15]

If this court were to find the constitutional violations here alleged, that would have the effect of reversing the support order. Logan v. Lillie, 965 F. Supp. at 699. Rooker-Feldman does not permit this.

Nor does the fact that plaintiff has raised official capacity claims based upon alleged unconstitutional policies or deficiencies in training alter the result. First of all, by

---

[15] See also Nationscredit Home Equity Servs. Corp. v. City of Chicago, 135 F.Supp.2d 905, 910 (N.D. Ill 2001) (federal claims barred by Rooker-Feldman where state court judgment of demolition gave rise to plaintiff's claims, not lack of notice of demolition); Neely v. Law Offices of Kevin Hermanek P.C., 122 F.Supp.2d 923, 925 (N.D. Ill. 2000) (dismissing case under Rooker-Feldman although plaintiff received no notice, when loss of property was result of enforcement of state court replevin order).

12

agreeing to the support order before the state court judge, plaintiff has waived any constitutional claims with respect to the state court process. Moreover, if this Court considered the official capacity claims, it would be required to evaluate ADA Esmonde's arguments to the state court and the result in the state child support matter. That, however, has already been determined or could have been determined in the state trial court, and plaintiff has raised the issue in his pending state court appeal. If ADA Esmonde did not act improperly, then there could be no wrongdoing on the part of the District Attorney. As such, the official capacity claims are inextricably intertwined with Philadelphia County Court's support determination and this Court lacks subject matter jurisdiction to review them. Hughes v. MacElree, No. CIV.A. 97-3304, 1997 WL 733609, *3 (E.D. Pa. 1997) (claim that Chester County had custom or practice of engaging in misconduct in child custody matters barred by Rooker-Feldman).[16]

---

[16] Even if subject matter jurisdiction existed, the Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ADA Esmonde is protected by the doctrine of absolute immunity for her actions in the support case. Butz v. Economou, 438 U.S. 478, 516-17 (1978) (government lawyers in agency proceedings absolutely immune from suit); Ernst v. Child and Youth Servs. of Chester County, 108 F.3d 486, 497 (3d Cir. 1997) (children and youth services workers and lawyers who represent them in dependency proceedings absolutely immune from liability under §1983); Hamill v. Wright, 870 F.2d 1032, 1037 (5th Cir. 1989) (prosecutor absolutely immune from liability for decision to bring action for contempt of child support order); Wilson v. Brock, No. CIV.A. 01-284-JD, 2002 WL 1676287, *5 (N.D. N.H. 2002) (agency employees absolutely immune for actions taken within the prosecutorial function in child support proceedings). Moreover, because plaintiff does not allege that the District Attorney took any action in his support case, he has failed to state any individual capacity claim against her. And, because ADA Esmonde is not a policymaker for the District Attorney's Office, plaintiff cannot maintain an action against her in any official capacity. See Payson v. Ryan, No. CIV.A. 90-1873, 1992 WL 111341, *11 (E.D. Pa. 1992) (assistant district attorneys are not policymakers for District Attorney's Office), aff'd, 983 F.2d 1051 (3d Cir. 1993).                                                                                      (continued. . . .)

In this civil rights suit plaintiff presents the same constitutional claims presented, or that could have been presented, in state court. The Rooker-Feldman doctrine precludes this maneuver. If plaintiff's constitutional claims should succeed, this Court's action would effectively reverse the state court support order, or "render that judgment ineffectual." FOCUS v. Allegheny County Court of Common Pleas, supra. This Court's favorable ruling on the constitutional claims here raised – which are simultaneously on appeal in the state Superior Court – would necessarily imply the invalidity of the state court proceedings. Accordingly, this Court lacks subject matter jurisdiction.[17]

---

(continued. . . .)

Finally, by consenting to entry of the support order in state court, plaintiff has waived all of his current claims, including his constitutional claims with respect to the supposedly unconstitutional policies in the District Attorney's Office. Plaintiff has also failed to adequately plead an official capacity claim. For liability to be imposed under Monell v. New York Department of Social Servs., 436 U.S. 658 (1978), plaintiff must plead much more than the isolated incident alleged in the Complaint; he must plead facts showing others were injured by the alleged policy. City of Canton v. Harris, 489 U.S. 378, 387 (1989); Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988); Lee v. City of Philadelphia, No. Civ.A. 86-2192, 1986 WL 8947, *1 (E.D. Pa. 1986). And, his failure to train claim consists of nothing more than the assertion that the District Attorney did not provide training to prevent ADA Esmonde from acting in the manner she did in this case. This hardly amounts to a sufficient allegation of a pattern or practice of showing deliberate indifference to individuals' constitutional rights to state a claim under Monell. 489 U.S. at 388; see City of Canton, supra.

[17] Since the Court is without jurisdiction over plaintiff's federal claims, this Court should decline to exercise pendent jurisdiction with respect to plaintiff's state tort claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"); Logan v. Lillie, supra at 699-700 (same).

14

## II. THIS COURT SHOULD ABSTAIN BASED ON YOUNGER V. HARRIS.

If this Court should determine that subject matter exists -- and it should not – it should dismiss the Complaint on Younger abstention grounds. Under Younger v. Harris, 401 U.S. 37 (1971), a federal court should abstain where there is an ongoing state proceeding. "[I]n a Union where both the States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions, particularly with the operation of state courts." Trainor v. Hernandez, 431 U.S. 434, 441 (1977). Although conceived to preclude federal review of state criminal proceedings, Younger abstention has been extended to state civil proceedings as well. Moore v. Sims, 442 U.S. 415, 423 (1979); Huffman v. Pursue, Ltd., 420 U.S. 592, 609 (1975). Younger abstention applies when there is an ongoing state proceeding, which implicates important state interests and affords an adequate opportunity to raise pertinent federal claims. Acierno v. New Castle County, 40 F.3d 645, 644 n. 13 (3d Cir. 1994). These prerequisites have been satisfied here.

There is a state appeal pending in which plaintiff has raised the federal claims here presented. Coats v. Woods, 819 F.2d 236, 237 (9th Cir.) (abstention in §1983 case involving custody dispute proper where "[p]laintiff had pending state actions in which he could bring his constitutional claims"); cert. denied, 484 U.S. 802 (1987); Neustein v. Orbach, 732 F.Supp. 333, 342 (E.D. N.Y. 1990) (abstention proper in §1983 case raising child custody claims since state courts fully competent to decide federal constitutional questions).

The second prong of the <u>Younger</u> test is also met. Questions of family matters, including child support obligations, are traditionally matters of state concern. <u>Weinstein v. Lasover</u>, Nos. CIV.A. 93-1552, 93-4223, 1993 WL 475505, *2 (E.D. Pa. 1993) (abstention proper where plaintiff brought §1983 action challenging state court proceedings in divorce, alimony, support and custody). Moreover, plaintiff has taken advantage of the opportunity to raise his constitutional §1983 claims in state court.

In <u>Trainor v. Hernandez</u>, <u>supra</u>, public assistance recipients sued the Illinois Department of Public Aid for bringing a state court action for the return of welfare payments allegedly wrongfully received. Although, as in this case, they received notice of the writ of attachment, they did not seek a hearing or attack the attachment in state court on the ground that it was unconstitutionally issued. Instead, as here, the <u>Trainor</u> plaintiffs filed a federal civil rights suit seeking injunctive relief. The Supreme Court held that the District Court should have abstained based on <u>Younger</u>. "The pendency of the state-court action called for restraint by the federal court and for dismissal of appellees' complaint unless extraordinary circumstances were present" such as any "suggestion that the pending state action was brought in bad faith or for the purpose of harassing appellees." 431 U.S. at 446. Plaintiff has raised no such extraordinary circumstances here.

Accordingly, if this Court determines that it has subject matter jurisdiction, it should abstain from exercising it.

## **CONCLUSION**

For these reasons, defendants respectfully request that this Court dismiss the Complaint with prejudice.

                Respectfully submitted,

                Karen A. Brancheau
                Chief, Civil Litigation Unit
                I.D. No. 37815
                District Attorney's Office
                1421 Arch Street
                Philadelphia, PA  19102
                (215) 686-5771

                Counsel for District Attorney
                Lynne Abraham and Assistant
                District Attorney Joan Esmonde

September 13, 2002

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the forgoing motion of District Attorney Lynne Abraham and Assistant District Attorney Joan Esmonde to dismiss plaintiff's Complaint and supporting memorandum of law were served by first class mail, postage prepaid to:

Richard A. McDaniel, Esq.
1616 Walnut Street
Suite 1910
Philadelphia, PA  19103

                                                                  _____
                                                                  Karen A. Brancheau

Date:  September 13, 2002