IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BOBBY McCURDY, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| JOAN ESMONDE, ESQ., and | : | NO. 02-4614 |
| HON. LYNNE ABRAHAM, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## ORDER AND MEMORANDUM

### ORDER

    **AND NOW**, this 30th day of January, 2003, upon consideration of Defendants' Motion to Dismiss Complaint and Amended Complaint (Document No. 6, filed September 13, 2002), Plaintiff's Memorandum of Law Contra Defendants' Motion to Dismiss (Document No. 8, filed October 9, 2002), Reply to Plaintiff's Memorandum of Law Contra Defendants' Motion to Dismiss (Document No. 10, filed October 25, 2002), and Plaintiff's Sur-Reply to Defendants' Reply Memorandum of Law to Plaintiff's Memorandum of Law Contra Defendants' Motion to Dismiss (Document No. 11, filed November 13, 2002), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Defendants' Motion to Dismiss Complaint and Amended Complaint is **GRANTED** and the action is **DISMISSED** for lack of subject matter jurisdiction.

### MEMORANDUM

## I.    BACKGROUND

    This civil rights action under 42 U.S.C. § 1983 arises out of allegations of

unconstitutional conduct in connection with child support proceedings brought against plaintiff in state court and the issuance of an order in those proceedings which prevented distribution to plaintiff of his share of the settlement of a civil rights action. Plaintiff's three-count Amended Complaint[1] alleges the bare bones of his claims; it provides no background information. The Court deems it appropriate to set forth in this Memorandum the background of plaintiff's claims in order to put them in context, and does so by reference to matters of public record. The following facts are taken from the Amended Complaint and attached exhibits or are matters of public record.[2]

On March 20, 1990, a complaint for child support was filed under 23 Pa. Cons. Stat. Ann. § 4301 et seq. ("child support complaint") against plaintiff in the Court of Common Pleas, Family Court Division, Philadelphia County. See Defs' Ex. A (reprinting child support complaint). At that time, plaintiff was incarcerated at SCI-Rockview. See id.; see also Defts' Ex. B (reprinting docket entries). No significant activity in the child support action took place until March 15, 2002. However, prior to that date, a number of events occurred that are relevant to this civil rights action.

On May 21, 1999, a civil rights action was commenced by Cynthia Dawson, Administratrix, in the Eastern District of Pennsylvania against the City of Philadelphia, seeking

---

[1] The original Complaint was filed on July 11, 2002. Plaintiff filed the Amended Complaint on August 28, 2002, before defendants filed any responsive pleading. In this Memorandum the Court addresses the allegations of the Amended Complaint.

[2] See infra § III.A (describing standard of review when defense of lack of subject matter jurisdiction is raised).

damages for the shooting death of another of plaintiff's children, Donte Dawson,[3] by several

police officers.  See Dawson v. Dodd, Civ. A. No. 99-2644 (E.D. Pa. filed May 21, 1999); Defs'

Ex. C (reprinting docket entries in federal civil rights case).  By Order dated August 11, 1999, the

district court approved a settlement of $712,500.00 and a schedule of distribution in that case.

See Defs' Ex. C (Doc. No. 12).  Plaintiff objected to the proposed distribution of the settlement

proceeds between himself and Cynthia Dawson.  See id. (Doc. No. 14).  By Order dated

September 10, 1999, $496,824.82 of the settlement proceeds were held in escrow pending

resolution of litigation between plaintiff and Cynthia Dawson over distribution of the funds in the

Court of Common Pleas, Orphans' Court Division, Philadelphia County.  See id.

    The litigation over the distribution of the settlement proceeds was settled on July 11,

2000.  See In re Donte Dawson, Deceased, O.C. No. 1438 of 1999.  By Decree dated July 11,

2000 ("Orphans' Court Decree"), the Orphans' Court awarded $256,000.00 to Cynthia Dawson,

and decreed that the balance of funds be distributed under the Pennsylvania Intestate Laws.  See

Defs' Ex. E (reprinting Orphans' Court Decree).  Under the Orphans' Court Decree, the

distribution of any settlement proceeds was subject to, inter alia, amounts owed to the

Department of Public Welfare.  See Defs' Ex. E ¶ 4.

    That same day, July 11, 2000, Assistant District Attorney Joan Esmonde ("ADA

Esmonde") prepared and obtained a nondistribution order relating to the child support

complaint.[4]  See Am. Compl. ¶ 9.  The nondistribution order barred the immediate distribution of

---

[3] Cynthia Dawson was the mother of Donte Dawson.

[4] Pennsylvania law provides that, in support actions, "[a]t any time after the filing of the
complaint, the court may on application issue a preliminary or special injunction, . . . order the
seizure of property[] . . . or grant other appropriate interim or special relief."  Pa. R. Civ. P.

the funds that plaintiff was to receive under the Orphans' Court Decree, and provided for future distribution of the funds only with the approval of the Court of Common Pleas.[5]  See id. ¶¶ 9, 12; id. Ex. A.  Plaintiff received no notice prior to being served with the order, nor was it docketed in the Court of Common Pleas.  See id. ¶ 10.

On August 10, 2000, plaintiff's attorney contacted the Court of Common Pleas, Domestic Relations Division, Philadelphia County, in order to determine the amount of child support plaintiff owed.  See id. ¶ 13.  In response, counsel received a Certification of Arrearage from the Director of the Customer Services Center of the Court of Common Pleas, Domestic Relations Division, Philadelphia County ("certification"), stating that plaintiff did not owe any money in child support as of August 10, 2000.  See id. Ex. B.  Plaintiff then contacted ADA Esmonde and told her that he was the father of the child for whom support was claimed, but that he did not owe any child support, and showed her the certification.  See id. ¶ 14.

---

1910.26.

[5] The nondistribution order, attached to plaintiff's Amended Complaint at Exhibit A, reads as follows:

> **AND NOW,** to wit, this July 11, 2000 it is hereby Ordered that:
>
> Attorneys, Richard McDaniel and Alan Yatvin are prohibited from distributing any funds to Bobby McCurdy from the proceeds of any personal injury case, workers compensation suit or any other legal matter in which either Alan Yatvin or Richard McDaniel represent Bobby McCurdy.  No distribution may take place without further order of this court.
>
> BY THE COURT:
>
> Paul P. Panepinto<br>JUDGE

See id. Ex. A.

On November 3, 2000, ADA Esmonde called plaintiff and demanded a "minimum support order" to be paid from the funds that plaintiff was to receive under the Orphans' Court Decree. See id. ¶ 15. Neither the Amended Complaint nor the public record contain any information regarding events occurring between November 3, 2000, and December 14, 2001, but on the latter date ADA Esmonde served plaintiff with an order directing him to appear for genetic testing on January 3, 2002. See id. ¶ 16; id. Ex. C (reprinting Order to Appear for Genetic Testing). Plaintiff appeared as ordered on January 3, 2002. See id. ¶ 17. The results of the genetic testing revealed that plaintiff was, in fact, the child's father. See id.

A pretrial conference was scheduled in the Court of Common Pleas, Family Court Division, for February 14, 2002. See id. ¶ 18. The purpose of the pretrial conference was to determine the amount of child support plaintiff owed from March 30, 1990 (the date the child support complaint was originally filed) to June 15, 1999 (the date at which the child turned eighteen years old). See id. The parties did not appear for the February 14, 2002 pretrial conference. See id. As a result, by Order dated February 14, 2002, the court dismissed the child support complaint. See id. ¶ 19; id. Ex. D (reprinting Order).

On March 15, 2002, ADA Esmonde filed a Petition for Special Relief ("Petition") in the Court of Common Pleas, Family Court Division, Philadelphia County, requesting that court to reinstate the child support complaint. See id. ¶ 20. A hearing on the Petition was scheduled for May 1, 2002. See id. On April 28, 2002, plaintiff's attorney requested a continuance of the May 1, 2002 hearing due to illness. See id. ¶ 21.

The hearing on the Petition proceeded on May 1, 2002, in the Court of Common Pleas, Family Court Division, Philadelphia County. See id. ¶ 22. Although plaintiff's counsel did not

appear, the hearing was not continued because ADA Esmonde advised the Court that she did not believe that plaintiff was, in fact, represented by the attorney and, in addition, she persuaded plaintiff to waive his right to counsel. See id. ¶¶ 22-23. ADA Esmonde also represented to the court that the funds subject to the July 11, 2000 nondistribution order were settlement proceeds from a personal injury lawsuit and that the long delay in prosecuting the child support complaint was attributable to the fact that plaintiff's whereabouts were unknown. See id. ¶¶ 28, 31.

At the hearing, by Order dated May 1, 2002, the child support complaint was reinstated. That Order also required plaintiff to pay $40 per week in child support for the period from May 20, 1990, the date the child support complaint was originally filed, to June 15, 1999, the date that the child reached his eighteenth birthday. See id. ¶ 24; id. Ex. E (reprinting child support order). On May 14, 2002, plaintiff filed a Notice of Appeal to the Superior Court of Pennsylvania. See id. The appeal is still pending.

## II.    **PROCEDURAL HISTORY**

Plaintiff brought the instant action by filing a Complaint on July 11, 2002, against ADA Esmonde and District Attorney Lynne Abraham ("DA Abraham"). He filed an Amended Complaint on August 28, 2002. Count I of the Amended Complaint asserts a claim against ADA Esmonde for unlawful deprivation of his constitutional right to due process, in violation of 42 U.S.C. § 1983 ("§ 1983"). See id. ¶¶ 27-30. Count II of the Amended Complaint asserts a claim against ADA Esmonde under state tort law for the wrongful use and abuse of state civil process and proceedings. See id. ¶¶ 42-48. Count III of the Amended Complaint asserts a claim against DA Abraham for failure to adequately train and supervise assistant district attorneys in the preparation and obtaining of nondistribution orders in child support proceedings, in violation of

§ 1983. See id. ¶¶ 31-34, 49-59. Plaintiff seeks compensatory and punitive damages and a

declaration that the practice and procedure of the District Attorney's office concerning

nondistribution orders in child support cases, without notice and an opportunity to be heard, is

unconstitutional. Plaintiff also seeks attorneys fees under 42 U.S.C. § 1988.

Defendants filed a motion to dismiss on September 13, 2002. In that motion, defendants

argue that the Court should dismiss plaintiff's civil rights action because: (1) the Court lacks

subject matter jurisdiction under the Rooker-Feldman doctrine, (2) if the Court concludes it has

jurisdiction, the Court should abstain from exercising jurisdiction under the doctrine of Younger

v. Harris, 401 U.S. 37 (1971) because the claims in the instant action have already been raised in

plaintiff's pending appeal before the Superior Court of Pennsylvania, (3) the doctrine of absolute

immunity bars plaintiff's individual capacity claims against ADA Esmonde, and (4) plaintiff has

failed to state either an individual or an official capacity claim against DA Abraham, and has

failed to state an official capacity claim against ADA Esmonde.

## III.    DISCUSSION

### A.    STANDARD OF REVIEW

The Supreme Court has explained that "'[w]ithout jurisdiction the court cannot proceed at

all in any cause.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (quoting

Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)). Federal Rule of Civil Procedure

12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject

matter . . . ." Fed. R. Civ. P. 12(b)(1). Plaintiff has the burden of establishing subject matter

jurisdiction. Carpet Group Int'l v. Oriental Rug Imp. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000)

(citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). In

evaluating a Rule 12(b)(1) motion, the Court first must determine whether the motion attacks the complaint on its face or on its facts.  Id.

A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations.  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1250, at 212-18 (2d ed. 1990).  As with a Rule 12(b)(6) motion, a court evaluating a facial challenge must accept the allegations in the complaint as true, and disposition of the motion becomes purely a legal question.  Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); Mortensen, 549 F.2d at 891.  In reviewing a facial attack, a court may rely on documents referenced within the complaint and attached thereto, but must view them in the light most favorable to the nonmoving party.  See id. at 176 & n.6; Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

On the other hand, if the motion disputes the existence of subject matter jurisdiction in fact, then "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Mortensen, 549 F.2d at 891.  In resolving a factual challenge under Rule 12(b)(1), "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction."  Gould Elec., 220 F.3d at 178 (citing Mortensen, 549 F.2d at 891).  A factual challenge under Rule 12(b)(1) may be made prior to the service of an answer.  See Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (holding that district court properly looked beyond allegations in complaint in ruling on defendant's motion to dismiss under Rule 12(b)(1) and therefore factual basis for jurisdictional

allegations in complaint could be disputed before answer was served).

Defendants base their motion to dismiss plaintiff's Amended Complaint under Rule 12(b)(1) on the Rooker-Feldman doctrine.  As this Court notes infra § III.B.1, an inquiry into whether the action before the Court violates Rooker-Feldman turns on whether the issues were or could have been raised and adjudicated in the state court child support proceeding, or whether the issues before the Court are inextricably intertwined with the state court judgment.  The central issues raised by the instant motion to dismiss under Rule 12(b)(1) are therefore fact-based.  See, e.g., Adams v. Costello, Civ. A. No. 96-4377, 1998 WL 242600, at *2 (E.D. Pa. May 13, 1998) (holding that where defendant brought Rule 12(b)(1) motion challenging subject matter jurisdiction under Rooker-Feldman, trial court is free to weigh evidence and satisfy itself as to exercise of power to hear case (quoting Mortensen, 549 F.2d at 891)); Wishnefsky v. Addy, 969 F. Supp. 953, 955-56 (E.D. Pa. 1997) (concluding that defendant had raised factual challenge to subject matter jurisdiction where defendant claimed that Rooker-Feldman barred federal lawsuit).

### B.   THE ROOKER-FELDMAN DOCTRINE

#### 1.   Applicable Law

A federal district court is one of original jurisdiction; as such, it lacks subject matter jurisdiction to entertain appeals from state courts.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923); Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't, 973 F.2d 169, 177-78 (3d Cir. 1992) (extending Rooker-Feldman bar to district court's review of decisions by lower state courts).  The Rooker-Feldman doctrine, which reflects these principles, is transgressed if the claim before the district court has been determined by the state court, or could

have been determined in a proceeding resulting in an adjudication by the state court, <u>see</u> <u>Valenti</u> <u>v. Mitchell</u>, 962 F.2d 288, 296 (3d Cir. 1992), or is "'inextricably intertwined with . . . a state adjudication.'" <u>Gulla v. N. Strabane Township</u>, 146 F.3d 168, 171 (3d Cir. 1998) (citing <u>FOCUS</u> <u>v. Allegheny County Court of Common Pleas</u>, 75 F.3d 834, 840 (3d Cir. 1996) and <u>Blake v.</u> <u>Papadakos</u>, 953 F.2d 68, 71 (3d Cir. 1992)); <u>Marks v. Stinson</u>, 19 F.3d 873, 886 n.11 (3d Cir. 1994) (quoting <u>Port Auth. Police Benevolent Ass'n</u>, 973 F.2d at 177).  In either scenario, "'federal relief can only be predicated upon a conviction that the state court was wrong, [and] it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.'" <u>Centifanti v. Nix</u>, 865 F.2d 1422, 1430 (3d Cir. 1989) (quoting <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

### 2.    <u>Count I of the Amended Complaint</u>

In Count I of the Amended Complaint, plaintiff seeks compensatory and punitive damages and attorney's fees against ADA Esmonde for her part in securing the July 11, 2000 nondistribution order.  Plaintiff argues that <u>Rooker</u>-<u>Feldman</u> should not preclude this claim because issues relating to the July 11, 2000 nondistribution order were not raised in the state court proceedings or in his pending appeal to the Superior Court of Pennsylvania—only issues involving the May 1, 2002 support order were adjudicated in state court.  Plaintiff further argues that he is not requesting the Court to review the child support proceedings or the May 1, 2002 support order.

### i.    Plaintiff Has Raised Constitutional Objections to the Nondistribution Order in His Appeal to the Superior Court of Pennsylvania

The Court rejects plaintiff's argument that the July 11, 2000 nondistribution order was

never presented to the state courts for adjudication.  To the contrary, plaintiff has presented that

issue to the Superior Court of Pennsylvania in his appeal.  Paragraph 10 of the Matters

Complained of on Appeal reads:  "Whether the document purported to be an order dated July 11,

2000 freezing distribution to defendant of his inheritance from the estate of his son, which order

was not supported by petition, never docketed, and improperly, illegally and fraudulently issued

without authority under rubber stamp signature of a judge of the lower court violate defendants

[sic] constitutional rights of due process of law and civil rights under 42 U.S.C. section 1983."

See Defs' Ex. J ¶ 10.  Plaintiff's statement to the contrary is clearly incorrect.

>       **ii.      The Issues Plaintiff Presents to this Court Have Been, or Could
>                  Have Been, Adjudicated in State Court or are Inextricably
>                  Intertwined With the State Court Judgment**

The Court also rejects plaintiff's argument that in the civil rights case he seeks to litigate

only the preparation and obtaining of the July 11, 2000 nondistribution order, not the proceedings

resulting in issuance of the May 1, 2002 support order.  To the contrary, the Amended Complaint

filed in this Court shows that plaintiff challenges both the state court proceedings and the

underlying state court support order in attacking the July, 11, 2000 nondistribution order.  See

Am. Compl. ¶ 15 (asserting that ADA Esmonde improperly engaged in ex parte contact with

plaintiff and demanded that plaintiff pay child support from sum to be distributed to plaintiff); id.

¶¶ 16-17 (stating that ADA Esmonde demanded that plaintiff appear for genetic testing despite

fact that plaintiff admitted he was father of child in question); id. ¶¶ 27-28 (alleging

misrepresentations made by ADA Esmonde during pendency of child support action regarding

source of plaintiff's funds); id. ¶¶ 37-38 (alleging that, as direct and proximate result of ADA

Esmonde's actions and inactions, $19,285.71 was unlawfully taken from plaintiff to satisfy child

support order entered on May 1, 2002); id. ¶ 40 (alleging that, as direct and proximate result of

ADA Esmonde's wrongful conduct, plaintiff was deprived of his rights under Fourth and

Fourteenth Amendments of U.S. Constitution).

       A review of the Matters Complained of on Appeal by plaintiff discloses that a number of

those matters are alleged in Count I of the Amended Complaint.  For example, plaintiff appealed

the May 1, 2002 support order on the ground that the state court lacked jurisdiction because the

Petition for Special Relief was not a proper means for "commencing" the child support action.

Defs' Ex. J ¶¶ 1-2.  Plaintiff's allegations in paragraph 32 of the Amended Complaint parallel

this issue.  Am. Compl. ¶ 32 (alleging that ADA Esmonde knew that Petition for Special Relief

was improper procedure to request state court to reinstate for "commencing" child support

action).  Additionally, plaintiff appealed the question whether his waiver of counsel at the May 1,

2002 hearing was voluntarily and knowingly made.  Defs' Ex. J ¶ 6.  This issue is also raised by

plaintiff in several paragraphs of the Amended Complaint.  Am. Compl. ¶¶ 22-25 (alleging that

ADA Esmonde made willful misrepresentations at May 1, 2002 hearing regarding plaintiff's

counsel and that ADA Esmonde and judge persuaded plaintiff into making unintelligent waiver

of his constitutional right to counsel); id. ¶ 33 (alleging that ADA Esmonde knew plaintiff was

represented by counsel).  Finally, in his appeal to the Superior Court, plaintiff raises a general

constitutional challenge to the child support proceedings under 42 U.S.C. § 1983.  Defs' Ex. J

¶ 9.  Similar allegations that ADA Esmonde's conduct throughout the child support proceedings

violated his right to due process under the U.S. Constitution are included in the Amended

Complaint.  Am. Compl. ¶¶ 29-30 (alleging that ADA Esmonde knew that funds to be distributed

to plaintiff were not subject to nondistribution order and that nondistribution order violated due

-12-

process); id. ¶¶ 34-36 (alleging that ADA Esmonde made willful misrepresentations at May 1,

2002 hearing and willfully failed to follow well-established procedural rules, thereby depriving

plaintiff of his property without due process).

     This comparison of the issues raised in state court and the allegations of the Amended

Complaint in this Court makes it abundantly clear that the issues presented to this Court have

been, or could have been, adjudicated in state court or are inextricably intertwined with the state

court judgment.  In order to determine whether ADA Esmonde violated plaintiff's constitutional

rights in securing the July 11, 2000 nondistribution order, the Court would have to review ADA

Esmonde's conduct during the pendency of the child support proceedings and rule on the

propriety of her conduct.  A ruling in plaintiff's favor by this Court would require this Court to

conclude that the state court erroneously decided at least some of the issues presented in the child

support proceedings.  Such review by this Court is barred under Rooker-Feldman.  See Carpenter

v. Pennell Sch. Dist. Elementary Unit, Civ. A. Nos. 01-6270, 02-625, 2002 WL 1832854, at *3

(E.D. Pa. Aug. 9, 2002) (holding that Rooker-Feldman barred plaintiff's claim under § 1983

where the relief he sought "is dependent, in one form or another, upon a reversal or modification

of the state court's custody decree"); Rose v. County of Lehigh, Civ. A. No. 01-13, 2001 WL

1085044, at *2 (E.D. Pa. Sept. 14, 2001) (holding that federal action seeking relief from

defendant for testifying falsely at child custody hearing was inextricably intertwined with state

proceedings because district court would have had to engage in "an intimate review of the

conduct and decisions of a state court"), aff'd, 35 Fed. Appx. 358 (3d Cir. 2002); Logan v. Lillie,

965 F. Supp. 695, 697-99 (E.D. Pa. 1997) (finding that complaint seeking relief from order

preventing plaintiff from seeing his children for six days prior to hearing was inextricably

intertwined with state court judgment on merits because district court would have had to conclude state court wrongly decided issue if it granted plaintiff relief).

The state court proceedings in this case involve the provision of child support. "Ensuring the provision of child support is a function particular to the states." Anthony v. Council, No. 01-2735, slip op. at 8 (3d Cir. Jan. 17, 2003); see also Schapiro v. Dickman, Civ. A. No. 95-0986, slip op. at 2 (E.D. Pa. Jan. 14, 2003) (denying plaintiff permission to file pro se complaint alleging various constitutional violations arising out of divorce settlement between plaintiff and his former spouse because "'[f]amily matters are a traditional area of state concern'" (quoting Moore v. Sims, 442 U.S. 415, 435 (1979)). If, as plaintiff claims, constitutional error occurred during the child support proceedings in state court, plaintiff had the right to seek relief through the state lower and appellate courts. See Fuller v. Harding, 699 F. Supp. 64, 66 (E.D. Pa. 1988), aff'd, 875 F.2d 310 (3d Cir. 1989) (table). Plaintiff has done so with respect to some of the issues he seeks to raise in this Court, all of which could have been raised in state court.

### iii.    Plaintiff Had a Full and Fair Opportunity to Litigate His Claims Regarding the July 11, 2000 Nondistribution Order

Plaintiff, however, asserts that the Court has jurisdiction because his federal claims regarding the preparation and issuance of the July 11, 2000 nondistribution order were not decided, and in fact could not have been decided, in state court. In advancing this argument, plaintiff claims that he could not have sought reconsideration of the July 11, 2000 nondistribution order because there was no procedure in state court by which he could challenge it. He also argues that this case should be allowed to proceed because the constitutional claims were never fully developed in state court.

-14-

Plaintiff relies on Wood v. Orange County, 715 F.2d 1543 (11th Cir.), reh'g denied, 720 F.2d 1294 (11th Cir. 1983) (table), cert. denied, 467 U.S. 1210 (1984) and Whiteford v. Reed, 155 F.3d 671 (3d Cir. 1998) for the proposition that Rooker-Feldman does not preclude a court from exercising jurisdiction where a party is denied a full and fair opportunity to litigate an issue before a state tribunal.  In Wood, the plaintiffs were not able to litigate their federal claims in state court because they had no notice of the adverse judgment until eleven months after it was issued, after the time for appeal had expired.  Id. at 1547.  Similarly, in Whiteford, the Third Circuit considered the propriety of the district court's dismissal of plaintiff's Complaint on Rooker-Feldman grounds where the plaintiff had alleged constitutional claims in an administrative proceeding that the state court never considered on appeal due to defects in the record.  Whiteford, 155 F.3d at 672.  The Third Circuit observed that Whiteford never had the opportunity to present his constitutional claims, and "this court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then Rooker-Feldman does not deprive the federal court of jurisdiction."  Id. at 674 (citing Gulla, 146 F.3d at 172-73 and E.B. v. Verniero, 119 F.3d 1077, 1091 (3d Cir. 1997)).

Neither case helps plaintiff avoid application of Rooker-Feldman.  Both Wood and Whiteford involved scenarios where the plaintiffs were not permitted to litigate issues in state court.   In this case, however, plaintiff could have challenged the July 11, 2000 nondistribution order throughout the child support proceedings.  The July 11, 2000 nondistribution order prevented plaintiff's attorney from distributing any settlement proceeds to plaintiff without permission of the Court of Common Pleas, but plaintiff never sought such permission.  To the contrary, plaintiff objected to the nondistribution order for the first time in his appeal to the

-15-

Superior Court.  The fact that plaintiff waited until he filed his state court appeal and this federal lawsuit to object to the issuance of the July 11, 2000 nondistribution order does not preclude the operation of Rooker-Feldman.  See Feldman, 460 U.S. at 483 n.16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court."); Lal v. Nix, 935 F. Supp. 578, 582-83 (E.D. Pa. 1996) (holding that even though plaintiff has not raised his present claims of discrimination by the Board of Bar Examiners and Justices of the Supreme Court of Pennsylvania before Board or state Supreme Court, because such claims were inextricably intertwined with state court processing, they were still barred by Rooker-Feldman doctrine); Lal v. Borough of Kennett Square, 935 F. Supp. 570, 576 (E.D. Pa. 1996) (determining that claims brought in federal court but not raised in state court were barred under Rooker-Feldman because they were inextricably intertwined with state court decision as district court judge would be forced to rule that state court was wrong in order to grant relief on those claims).

Plaintiff's claims under Count I of the Amended Complaint are therefore barred by Rooker-Feldman.  This Court has no jurisdiction over such claims.

### 3.    Count III of the Amended Complaint

In Count III of the Amended Complaint, plaintiff seeks declaratory relief, compensatory and punitive damages, and attorney's fees arising out of DA Abraham's failure to adequately train and supervise assistant district attorneys in the preparation and obtaining of nondistribution orders in child support proceedings.  Am. Compl. ¶¶ 51-57.  Plaintiff argues that Count III of the Amended Complaint is not barred by the Rooker-Feldman doctrine because it poses a general challenge to the District Attorney Office's practice and procedure in preparing and obtaining

nondistribution orders in child support cases.  The Court disagrees with plaintiff and concludes

that it does not have subject matter jurisdiction over the claims in Count III of the Amended

Complaint because the factual allegations are inextricably intertwined with the state court

adjudication in the child support proceedings and the relief that plaintiff seeks is inconsistent

with a general constitutional challenge.

"General constitutional challenges which are not inextricably intertwined with the merits

of a state court judicial decision in a particular case are not precluded by Rooker-Feldman."

Pawlak v. Pa. Bd. of Law Examiners, Civ. A. Nos. 93-1998, 93-2724, 1995 WL 517646, at *10

(E.D. Pa. Aug. 30, 1995).  When that issue is raised a court must determine whether an action

presents a general constitutional challenge permitted under Rooker-Feldman, or a challenge so

intertwined with the state court adjudication that the relief sought would have the impermissible

effect of overturning a state court judgment.  See Centifanti, 865 F.2d at 1429-30; Stern v. Nix,

840 F.2d 208, 212 (3d Cir.), cert. denied, 488 U.S. 826 (1988).

The Third Circuit's opinions in Stern and Centifanti demonstrate the way in which the

relief sought distinguishes a challenge to a state court adjudication in a particular case from a

general constitutional challenge.  In Stern, Stern, an attorney who had been disbarred by Supreme

Court of Pennsylvania, instituted a § 1983 action in federal court challenging the state bar's

procedural rules which allowed the Supreme Court of Pennsylvania to reject findings made by

the Hearing Committee and the Disciplinary Board without affording him a hearing.  Stern, 840

F.2d at 210.  Stern sought a temporary restraining order, a preliminary and permanent injunction

staying the Supreme Court's order disbarring him, and declaratory relief requiring the Supreme

Court to afford a hearing in any case in which it plans to reject the findings of the Hearing

Committee. Id. at 210. The Third Circuit affirmed the district court's dismissal of Stern's case for lack of subject matter jurisdiction under Rooker-Feldman, holding that the relief requested was incompatible with a general constitutional challenge. Id. at 211-13. Specifically, the Third Circuit ruled that a permanent injunction staying the Supreme Court's order disbarring Stern would effectively reverse the state court judgment in Stern's case. Id. at 212.

In contrast, the Third Circuit concluded that the Complaint in Centifanti presented a general challenge to procedural rules which would not result in the overturning of a state court adjudication. Centifanti involved a suspended attorney who had been denied reinstatement by the Supreme Court of Pennsylvania. Centifanti, 865 F.2d at 1425-26. Like Stern, Centifanti sought declaratory and injunctive relief in federal court based on his claim that the state procedural rules were unconstitutional. Id. The Third Circuit allowed Centifanti's challenge to proceed because Centifanti sought prospective declaratory relief applicable to consideration of future petitions for reinstatement, not the decision of the Supreme Court in his case. Id. at 1429. The Third Circuit further noted that Centifanti's general challenge was not inextricably intertwined with judgment of the Supreme Court because the "district court could hold that the state rules in question violate the Constitution, without holding that the Pennsylvania Supreme Court erred in denying Centifanti's petition for reinstatement." Id. at 1430.

In short, the relief requested by Centifanti and Stern differed in one crucial aspect: While Stern had been disbarred by the Supreme Court of Pennsylvania and was challenging his disbarment, Centifanti had been denied reinstatement by the Supreme Court and was trying to change the procedures applicable to future petitions for reinstatement. The former violates Rooker-Feldman; the latter does not.

-18-

In the instant case, plaintiff's Amended Complaint fails for the same reasons articulated in <u>Stern</u>. Viewing the relief sought in the Amended Complaint, it is clear that the primary purpose of the civil rights action is to recover compensatory and punitive damages from defendants. First, plaintiff includes in the <u>ad</u> <u>damnum</u> clause claims for compensatory and punitive damages with his claim for declaratory relief. Second, and more importantly, in Count III, the supposed general constitutional challenge, plaintiff claims that as a result of the challenged inadequate training and unconstitutional conduct of the District Attorney, he has "suffered losses in excess of $100,00[0].00." Am. Compl. ¶ 58. Because such relief focuses on defendants' past actions and requires plaintiff to prove specific injury to himself, it is fundamentally inconsistent with plaintiff's argument that Count III of the Amended Complaint poses a general constitutional challenge to the practice and procedure of the District Attorney in preparing and obtaining nondistribution orders in child support cases. Like the claims for a temporary restraining order and a preliminary injunction in <u>Stern</u>, plaintiff's claims for compensatory and punitive damages shift the focus of Count III of the Amended Complaint to the state court child support proceedings. <u>See Stern</u>, 840 F.2d at 212. <u>Rooker</u>-<u>Feldman</u> bars such an inquiry. <u>See Pawlak</u>, 1995 WL 517646, at *13, 15 (holding that plaintiff's general challenge, seeking declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees based on Pennsylvania Board of Law Examiners' decision not to allow her to sit for bar exam was inconsistent with general challenge because she would have to prove injury to herself in order to collect damages).

Additionally, plaintiff's Amended Complaint is replete with factual allegations of alleged unconstitutional conduct arising out of the child support proceedings in state court. Such

allegations are completely irrelevant if plaintiff is genuinely asserting a general constitutional challenge to the preparation and obtaining of nondistribution orders in child support cases.  As in Stern, such "extensive exposition of the specific facts in [plaintiff's] case" in plaintiff's Amended Complaint, "hardly would have been necessary if the district court were being asked only to assess the validity" of the general practice and procedure in issuing nondistribution orders, rather than what happened to him in his child support case.  See Stern, 840 F.2d at 212-13 (internal quotation marks omitted).  Therefore, "a close examination of [plaintiff's] case demonstrates that, despite his attempt to draft his complaint in the form of a general challenge to a state court rule, he in reality is seeking review of a state court judgment in his particular case." Id. at 213.  Plaintiff's claim for declaratory relief therefore, is inextricably intertwined with the state court adjudication in the child support proceedings.

Plaintiff's claims under Count III of the Amended Complaint are barred by Rooker-Feldman.  This Court lacks jurisdiction over such claims.

## C.    DEFENDANTS' REMAINING ARGUMENTS

In their Motion to Dismiss, defendants raise several arguments in support of dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  The Court cannot address any such issues in view of its determination that it lacks subject matter jurisdiction.  See 5A Wright & Miller, supra § 1350, at 209-10 ("[W]hen the motion [to dismiss] is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.").

-20-

**D.    PLAINTIFF'S STATE LAW TORT CLAIMS ASSERTED IN COUNT II OF THE AMENDED COMPLAINT**

Defendant alleges in the Amended Complaint that the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over his state law claims.  In view of the Court's determination it has no jurisdiction over plaintiff's asserted federal civil rights claims, it can have no supplemental jurisdiction over plaintiff's state law claims.

**IV.    CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss Complaint and Amended Complaint for lack of subject matter jurisdiction.


**BY THE COURT:**


_____

**JAN E. DUBOIS, J.**